UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 05 CR 10011 GAC |
| ) | |
| ) | VIOLATIONS: |
| v. ) | |
| ) | 18 U.S.C. § 371 (Conspiracy) |
| ) | 16 U.S.C. §§ 3372(a)(1), (a)(2)(A), (a)(4) and |
| ) | 3373(d)(1)(B) (Lacey Act) |
| JOSE SILVA, ) | 18 U.S.C. § 1001 (False Statement) |
| ) | 18 U.S.C. § 1519 (Obstruction of Justice) |
| Defendant. ) | 18 U.S.C. § 2 (Aiding and Abetting) |
| ) | |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

### Introduction

At all times material to this Indictment,

1. JOSE SILVA was a resident of North Dartmouth, Massachusetts and a commercial fisherman by profession.

2. SILVA owned and operated a commercial fishing business through the Massachusetts corporations, Silva Fishing Corporation, Inc. and Aveiro Corporation, Inc. JOSE SILVA was the president and controlling shareholder of each corporation, and exercised complete control over their affairs.

3. The *F/V Lutador* and *F/V Lutador II* were commercial fishing vessels based in New Bedford, Massachusetts.

4. Silva Fishing Corporation, Inc. held title to the *F/V Lutador*, and Aveiro Corporation, Inc. held title to the *F/V Lutador II*.

5. In addition to his ownership interest in the vessels, SILVA served as the captain of

the *F/V Lutador* and *F/V Lutador II*, except from time to time when he would hire another captain and crew to staff the vessel. As the captain, SILVA was responsible for the entire operation of the vessel, including navigation and fishing.

## Overview of the Conspiracy

6. JOSE SILVA, along with others known and unknown to the grand jury, engaged in a four-year long conspiracy to profit from the selling of illegally-taken lobsters, including female egg-bearing lobsters, "v-notched" female lobsters, and lobsters in excess of the 500-per-trip limit; whereby he, among other things, removed, and directed others to remove, the eggs of female lobsters caught on board his fishing vessels, sold the lobsters to seafood brokers and wholesalers in New Bedford, and covered up the practice by hiding the lobsters from the Coast Guard in secret compartments on his fishing vessels and by instructing crew members not to divulge the practice to law enforcement officials.

## Regulatory Background

7. The catching of American lobsters off the Atlantic Coast is regulated by the Atlantic Coastal Fisheries Cooperative Management Act ("ACFCMA"), 16 U.S.C. § 5101 et seq. and the regulations promulgated thereunder, Title 50, Code of Federal Regulations, Sections 697. The purpose of the ACFCMA is, among other things, to protect the American lobster fishery off the East Coast of the United States from overfishing.

8. Among the protections created by the ACFCMA are the regulations protecting female lobsters and those capping the number of lobsters that may be caught during a single fishing trip. These regulations, which may be found at Title 50, Code of Federal Regulations, Section 697.7(c)(1), provide, among other things, that "it is unlawful for any person owning or

operating a vessel issued a Federal limited access American lobster permit . . . to do any of the following:"

(1) "Remove eggs from any berried female American lobster, land or possess any such lobster from which eggs have been removed;"

(2) "Retain on board, land or possess any V-notched female American lobster;" and

(3) "Possess, retain on board, or land lobster by a vessel with any non-trap gear on board capable of catching lobsters, in excess of 100 lobsters (or parts thereof), for each lobster day-at-sea, up to a maximum of 500 lobsters (or parts thereof) for any one trip . . . ."

9. Section 697.2 includes the following definitions:

(1) *"American lobster* or lobster means *Homarus americanus.*"

(2) *"Berried female* means a female American lobster bearing eggs attached to the abdominal appendages;"

(3) *"V-notched American lobster* means any female American lobster bearing a V-shaped notch in the flipper next to and to the right of the center flipper as viewed from the rear of the lobster (underside of the lobster down and tail toward the viewer) . . . ."

## COUNT ONE
### (Conspiracy – 18 U.S.C. § 371)

10.   From in or about February 2000 through in or about March 2004, in the District of Massachusetts and elsewhere, the defendant,

JOSE SILVA,

and others known and unknown to the Grand Jury, knowingly, willfully, and unlawfully combined, conspired and agreed with each other to commit the following offense against the United States:

> To knowingly engage in conduct that involved the sale, offer for sale, and intent to sell wildlife with a market value in excess of $350; to wit, American lobsters (*Homarus americanus*), and did knowingly transport and sell and attempt to transport and sell said wildlife knowing that said wildlife was taken and possessed in violation of and in a manner unlawful under the laws and regulations of the United States, specifically, 50 C.F.R. Sections 697.7(c)(1)(iv), (v) and (xxiv), all in violation of Title 16, United States Code, Section 3372(a)(1), 3372(a)(4) and 3373(d)(1)(B).

### Manner and Means of the Conspiracy

Among the means and methods by which the defendant carried out the conspiracy were the following:

11.   The *F/V Lutador* and *F/V Lutador II* were Western-rigged stern trawlers, a type of commercial fishing vessel that catches fish by towing large nets that extend to the ocean floor which, when retracted by a large winch, dump fish onto the deck to be processed and stored.

4

12. JOSE SILVA maintained the requisite federal and state permits for each vessel, including a Federal limited-access lobster permit and a Massachusetts commercial lobster fishing permit.

13. On most trips, each vessel would carry a crew of five, which usually included the captain, JOSE SILVA, a mate, an engineer, a cook and a deckhand. All would participate in the process of gathering the fish emptied from the nets and transferring them to the fish hold, the area below the deck of the vessel where fish are stored on ice.

14. Both vessels were capable of catching, and did catch, a variety of species of fish, including haddock, cod, and grey sole. The vessels also caught American lobsters (hereinafter "lobsters"), particularly during the winter months when lobsters are more commonly found in the deeper waters where trawlers like the *F/V Lutador* and *F/V Lutador II* ordinarily fish.

15. The vessels sold their catch to seafood wholesalers in New Bedford. The fish wholesalers would process the fish, including the lobsters, and sell it to other wholesalers and retailers, including restaurants, all over the country.

16. As is common among fishing boat captains, JOSE SILVA would pay his crew based on the percentage of the total catch.

17. The defendant was aware that it was common knowledge in the fishing industry that the taking of female egg-bearing lobsters was against the law, and that, when caught, egg-bearing lobsters should be thrown back into the ocean. He further knew that, for that very reason, wholesalers would not purchase lobsters with visible eggs.

18. Nevertheless, JOSE SILVA and his crew would catch and keep as part of the total catch female egg-bearing lobsters.

5

19. So that he could pass off the egg-bearing lobsters as legal lobsters to wholesalers, JOSE SILVA, at various times throughout the conspiracy, removed eggs from female lobsters, and directed other crew members to do the same.

20. The defendant and his crew would remove eggs by flipping a lobster upside down (thereby exposing the abdominal area where eggs cluster), immobilizing the lobster by stepping on its claws and tail, and "washing" or "scrubbing" off the eggs using a water hose whose pressure they would increase by pressing down on the nozzle.

21. The defendant was further aware of the long-standing custom in the lobster fishing industry that when a lobsterman catches an egg-bearing lobster, he cuts a v-shaped notch in the lobster's flipper and throws the lobster back overboard. That way, other fishermen who later catch the same lobster will know that it is a proven egg-bearing female and should be returned to the ocean. The defendant knew that the purpose of this practice was to facilitate lobster reproduction, and thereby to sustain the industry. The defendant also knew that the retaining of female v-notched lobsters was against the law.

22. Nevertheless, JOSE SILVA and the crew would catch, keep as part of the total catch, and sell v-notched egg-bearing lobsters.

23. On the *F/V Lutador* and *F/V Lutador II*, lobsters were stored in a water tank on the deck or in the fish hold. As they placed the lobsters in storage, the crew continually would update JOSE SILVA on the number of lobsters being stored. JOSE SILVA would record the information conveyed by the crew.

24. Although the defendant knew that retaining more than five hundred lobsters in a single trip was against the law, at various times the defendant caught and retained more than five

6

hundred lobsters.

25. Because the vessels were subject to inspection at sea by the United States Coast Guard without warning, the defendant and other crew members, would store in secret compartments in the fish hold the washed and v-notched female lobsters, as well as lobsters in excess of the five hundred-per-trip limit. Specifically, they would fill the bottom of a fish pen with lobster, build a shelf across the pen with wooden boards, and cover the shelf with ice and other fish to conceal it.

26. In order to avoid detection, the defendant instructed the crew not to tell anyone about the lobsters they caught or how they were stored.

### Overt Acts

27. In furtherance of the conspiracy and to accomplish its objectives, the defendant and other co-conspirators in the District of Massachusetts and elsewhere, performed numerous overt acts, including, but not limited to, the following:

   a. At various times, the defendant washed egg-bearing lobsters and instructed others on board to do the same;

   b. At various times, the defendant retained on board v-notched female lobsters;

   c. At various times, the defendant retained on board more than five hundred lobsters in a single fishing trip;

   d. At various times, the defendant instructed crew members not to divulge to anyone that female, egg-bearing lobsters had been washed;

   e. At various times, the defendant sold washed and v-notched lobsters, as

well as lobsters caught in excess of the five hundred-per- trip limit;

  f. In or about early-March, 2004, the defendant exceeded the five hundred lobster limit for the then current trip, by retaining on board approximately twelve-hundred lobsters;

  g. In or about early-March, 2004, the crew of the *F/V Lutador II*, at the direction of the defendant, washed approximately six hundred egg-bearing female lobsters;

  h. In or about early-March, 2004, the crew of the *F/V Lutador II*, at the direction of the defendant, retained on board approximately one hundred v-notched female lobsters;

  i. In or about early-March, 2004, the crew of the *F/V Lutador II*, at the direction of the defendant, outfitted two fish pens in the fish hold with secret compartments for the purpose of concealing excess, v-notched and washed lobsters;

  j. On or about March 7, 2004, for the purpose of concealing the lobsters in the secret compartments, JOSE SILVA told boarding officers from the Coast Guard, during a routine inspection of the vessel that began near Quick's Hole, Massachusetts, that there were no lobsters in the fish hold when in fact he knew there were hundreds;

  k. On or about March 7, 2004, for the purpose of concealing the lobsters in the secret compartments, JOSE SILVA presented to a Coast Guard boarding officer, during a routine inspection of the vessel that began near Quick's Hole, Massachusetts, an inventory of his catch on a piece of paper that indicated that there were two thousand pounds of lobster on board, when in fact, JOSE SILVA, who had kept track of the amount of lobster caught, knew there was far more on board; and

l.      On or about March 7, 2004, JOSE SILVA instructed crew members, when confronted by the Coast Guard, to state that they washed female lobsters during the trip without JOSE SILVA's knowledge, when in fact, JOSE SILVA had directed them to do so.

All in violation of Title 18, United States Code, Section 371.

**COUNT TWO**
**(Lacey Act - 16 U.S.C. §§ 3372(a)(1), (a)(4) and 3373(d)(1)(B))**

THE GRAND JURY FURTHER CHARGES THAT:

28. Paragraphs 1-27 are realleged and incorporated by reference as though fully set forth herein.

29. On or about March 7, 2004, in the District of Massachusetts and elsewhere, the defendant,

JOSE SILVA,

and others known and unknown to the Grand Jury, unlawfully and knowingly did engage in conduct that involved the intent to sell wildlife with a market value in excess of $350: to wit, American lobsters (*Homarus americanus*), and did knowingly transport and attempt to transport and sell said wildlife knowing that said wildlife was taken and possessed in violation of and in a manner unlawful under the laws and regulations of the United States, to wit:

(1) Female American lobsters whose eggs had been removed in violation of Title 50, C.F.R., Section 697.7(c)(1)(iv);

(2) V-notched female lobsters in violation of Title 50, C.F.R., Section 697.7(c)(1)(v); and

(3) Lobsters, in excess of five hundred, retained on board a vessel with non-trap gear capable of catching lobsters, on a single fishing trip, in violation of Title 50, C.F.R., Section 697.7(c)(1)(xxiv) .

All in violation of Title 16, United States Code, Sections 3372(a)(1), (a)(4) and 3373(d)(1)(B) and 2.

## COUNT THREE
## (Lacey Act - 16 U.S.C. §§ 3372(a)(2)(A), (a)(4) and 3373(d)(1)(B))

THE GRAND JURY FURTHER CHARGES THAT:

30. Paragraphs 1-27 are realleged and incorporated by reference as though fully set forth herein.

31. On or about March 7, 2004, in the District of Massachusetts and elsewhere, the defendant,

## JOSE SILVA,

and others known and unknown to the Grand Jury, unlawfully and knowingly did engage in conduct that involved the intent to sell wildlife with a market value in excess of $350: to wit, American lobsters (*Homarus americanus*), and did knowingly transport and attempt to transport and sell said wildlife knowing that said wildlife was taken and possessed in interstate commerce, in violation of and in a manner unlawful under the laws and regulations of the Commonwealth of Massachusetts, to wit, female lobsters from which eggs had been removed by means other than natural hatching in violation of Massachusetts General Laws, chapter 130, Section 39.

All in violation of Title 16, United States Code, Sections 3372(a)(2)(A), (a)(4) and 3373(d)(1)(B) and 2.

## **COUNT FOUR**
### (False statements – 18 U.S.C. § 1001)

THE GRAND JURY FURTHER CHARGES THAT:

32. Paragraphs 1-27 are realleged and incorporated by reference as though fully set forth herein.

33. On or about March 7, 2004, in the District of Massachusetts and elsewhere,

### JOSE SILVA

a defendant herein, in a matter within the jurisdiction of the executive branch of the Government of United States, did knowingly and willfully make a materially false statement; to wit, in response to a question by a Coast Guard boarding officer whether the fish hold of the *F/V Lutador II* contained any lobster, JOSE SILVA answered in the negative, knowing such answer was false in that he knew in fact that hundreds of lobsters were hidden in the fish hold.

All in violation of Title 18, United States Code, Section 1001.

## COUNT FIVE
## (Obstruction of Justice – 18 U.S.C. § 1519)

THE GRAND JURY FURTHER CHARGES THAT:

34. Paragraphs 1-27 are realleged and incorporated by reference as though fully set forth herein.

35. On or about March 7, 2004, in the District of Massachusetts and elsewhere,

## JOSE SILVA

a defendant herein, did knowingly and willfully falsify a record with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of an agency of the United States, in that he submitted to the United States Coast Guard a document purporting to reflect an inventory of fish on the *F/V Lutador II* caught during the fishing trip just ending that included an entry, "2000 – Lobster," purporting to mean that there were two thousand pounds of lobster on board when in fact he knew that there was more lobster on board.

All in violation of Title 18, United States Code, Section 1519.

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY


_____
Jonathan F. Mitchell
Assistant United States Attorney

Date:  1/20/05


District of Massachusetts, January 20, 2005 at

Returned to the District Court by the Grand Jurors and filed.

_____
Deputy Clerk
12:53P

%JS 45 (5/97) - (Revised USAO MA 1/15/04)    05 CR 10011 GAO

| Criminal Case Cover Sheet | U.S. District Court - District of Massachusetts |

**Place of Offense:** Massachusetts    **Category No.** II    **Investigating Agency** NAT.MAR.FISH. SERV.

**City** New Bedford    **Related Case Information:**

**County** Bristol    Superseding Ind./ Inf. _____ Case No. _____
Same Defendant _____ New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name   Jose Silva    Juvenile  [ ] Yes  [x] No

Alias Name _____

Address   1270 Reed Road, North Dartmouth, Massachusetts 02747

Birth date (Year only): 1954   SSN (last 4 #): 7087   Sex M   Race: Caucasian   Nationality: _____

Defense Counsel if known:   Michael Collora    Address: 600 Atlantic Avenue
                                                          Boston, MA 02210
Bar Number: _____

**U.S. Attorney Information:**

AUSA   Jon Mitchell    Bar Number if applicable   629499

Interpreter:  [x] Yes  [ ] No    List language and/or dialect:   Portuguese

Matter to be SEALED:  [ ] Yes  [x] No

[ ] Warrant Requested    [x] Regular Process    [ ] In Custody

**Location Status:**

Arrest Date: _____

[ ] Already in Federal Custody as _____ in _____
[ ] Already in State Custody _____   [ ] Serving Sentence   [ ] Awaiting Trial
[ ] On Pretrial Release:  Ordered by _____ on _____

**Charging Document:**  [ ] Complaint   [ ] Information   [x] Indictment

**Total # of Counts:**  [ ] Petty _____   [ ] Misdemeanor _____   [x] Felony  5

Continue on Page 2 for Entry of U.S.C. Citations

[x]  I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date:  1/20/05    Signature of AUSA: _____

≋JS 45  (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**05** CR **1 0 0 1 1** GAO

**District Court Case Number**  (To be filled in by deputy clerk): _____

**Name of Defendant**    Jose Silva

## U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1   18 U.S.C. § 371 | Conspiracy | 1 |
| Set 2   16 U.S.C. §§ 3372, 3373 | The Lacey Act | 2-3 |
| Set 3   18 U.S.C. § 1001 | False Statements | 4 |
| Set 4   18 U.S.C. § 1519 | Obstruction of Justice | 5 |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:**